UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.

MEHMET OZCAN,
ONUR SIMSEK, and
YUKSEL SENBOL



CASE NO.
8:23-cr-384-MSS-AEP

18 U.S.C. § 286
18 U.S.C. § 1349
18 U.S.C. § 1343
18 U.S.C. § 1956(h)
18 U.S.C. § 1957
50 U.S.C. § 4819
22 U.S.C. § 2778

## INDICTMENT

The Grand Jury charges:

## COUNT 1
(Conspiracy to Defraud the U.S. Government)
(18 U.S.C. § 286)

### A.   Introduction

At times material to this Indictment:

1.     The United States Department of Defense ("DoD") was an executive branch department of the United States government charged with coordinating and supervising all agencies and functions of the United States government directly related to national security and the United States Armed Forces. The DoD contracted with private companies for a variety of equipment and supplies.

2.     The Defense Logistics Agency (DLA), a component of the DoD, provided worldwide combat logistics support to DoD departments and agencies, including the Army, Navy, Air Force, and Marine Corps, by supplying the U.S.

military with equipment, materials, and services. The DLA entered into contracts with government contractors in order to procure the necessary components to support DoD.

3.      The Federal Acquisition Regulation (FAR) was a set of rules that all U.S. government contractors had to abide by in order to conduct business with the U.S. government. FAR subpart 9.405 provided that "[c]ontractors debarred, suspended, or proposed for debarment are excluded from receiving contracts, and agencies shall not solicit offers from, award contracts to, or consent to subcontracts with these contractors, unless the agency head determines that there is a compelling reason for such action."

4.      Under the Buy American Act, many DLA contracts required that components supplied to DoD were "domestic end products." FAR subpart 25.101 required that domestic end products had to be manufactured in the United States.

5.      Certain DLA contracts awarded to private contractors involved export-controlled militarily sensitive technologies. In order to access the export-controlled drawings necessary to manufacture those items, contractors were required to be approved through the U.S./Canada Joint Certification Office's Joint Certification Program (JCP). In order to be approved through JCP, the contractor had to certify that it would not share or export the data in violation of export control laws and regulations.

6.      The International Organization for Standardization (ISO) is a global network of national standards bodies. Among other items, the group established ISO

2

9001, which lays out the criteria for a quality management system. The quality management system is similar to a best-practices guide to ensure quality and efficiency. Manufacturers can be "ISO 9001 certified" by various ISO certifying members. In DoD contracting, many reputable manufacturing companies are ISO 9001 certified. Additionally, within government contracting, some solicitations may require the manufacturer to be ISO 9001 certified prior to contract award.

7.     MEHMET OZCAN ("OZCAN") was a Turkish national residing in Turkey. OZCAN operated the company "Edebali Makina Kimya Medikal Plastik Otomotiv Uretim Sanayi Ve Ticaret Limited Sirketi" ("Edebali Makina"), which was a manufacturing company located in the country of Turkey.

8.     ONUR SIMSEK ("SIMSEK") was a Turkish national residing in Turkey. In 2018, in the United States District Court for the Southern District of Florida, SIMSEK pleaded guilty to conspiring to defraud the government with respect to claims by selling Turkish-manufactured components to DoD, in violation of 18 U.S.C. § 286. Because of this conviction, the United States Department of Justice and DLA each debarred SIMSEK, prohibiting him from receiving contracts or subcontracts from any United States Government agency and prohibiting him from conducting business with the United States Government as an agent or representative of other contractors. The debarment was in effect for the period October 12, 2018, through October 10, 2023.

9.     YUKSEL SENBOL ("SENBOL") was a United States citizen residing in the Middle District of Florida. SENBOL was the manager and registered agent of

Mason Engineering Parts LLC ("Mason Engineering"), a company based in the Middle District of Florida. SENBOL registered Mason Engineering to conduct business with DLA as a Woman Owned Small Business.

10.     DLA Contractor 1 was a contractor located in South Carolina. DLA Contractor 1 was registered to conduct business with DLA as a Service Disabled Veteran Owned Small Business.

### B.     The Conspiracy

11.     Beginning in or around April of 2019, and continuing until on or about February 15, 2022, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

> **MEHMET OZCAN,**
> **ONUR SIMSEK, and**
> **YUKSEL SENBOL,**

did knowingly and willfully enter into an agreement, a combination, and a conspiracy with each other and other persons, known and unknown to the Grand Jury, to defraud the United States, the United States Department of Defense, and the United States Defense Logistics Agency, by obtaining the payment of false, fictitious, and fraudulent claims.

### C. Manner and Means

12.     The manner and means by which the co-conspirators sought to accomplish the objects of the conspiracy included, among others:

4

a.      It was part of the conspiracy that SIMSEK and OZCAN would and did direct SENBOL to register a company in Florida in order to conduct business with DLA;

b.      It was further part of the conspiracy that SIMSEK, OZCAN, and SENBOL would and did cause Mason Engineering to enter into contracts or subcontracts to manufacture United States military components to be supplied to DLA;

c.      It was further part of the conspiracy that SENBOL and other co-conspirators would and did make material false representations and omissions to DLA, and would and did cause DLA Contractor 1 to make material false representations and omissions to DLA, concerning the manufacture of military components to be supplied to DLA;

d.      It was further part of the conspiracy that SENBOL would and did falsely represent to DLA and to DLA Contractor 1 that the parts she was selling would be manufactured by Mason Engineering;

e.      It was further part of the conspiracy that SENBOL would and did falsely represent to DLA and to DLA Contractor 1 that the parts she was selling would be manufactured in the United States;

f.      It was further part of the conspiracy that SENBOL and other co-conspirators would and did falsely represent to DLA and to DLA Contractor 1 that Mason Engineering had received an ISO 9001 certification;

g.      It was further part of the conspiracy that SENBOL would and did conceal the fact that SIMSEK, OZCAN, and Edebali Makina were involved in Mason Engineering's business from DLA and DLA Contractor 1;

h.      It was further part of the conspiracy that co-conspirators would and did email export-controlled technical drawings to SIMSEK and OZCAN, who were located in Turkey, in violation of the JCP and DLA contracts;

i.      It was further part of the conspiracy that SENBOL would and did permit SIMSEK, OZCAN, and other co-conspirators to access and control her computer from Turkey by using remote desktop control software, in order to access export-controlled technical drawings, in violation of the JCP and DLA contracts;

j.      It was further part of the conspiracy that SIMSEK, OZCAN, and other co-conspirators working on behalf of Edebali Makina would and did manufacture the components to be supplied to DLA in Turkey;

k.      It was further part of the conspiracy that SIMSEK, OZCAN, and other co-conspirators would and did ship components manufactured by Edebali Makina in Turkey to SENBOL in the Middle District of Florida;

l.      It was further part of the conspiracy that SENBOL would and did re-ship components manufactured by Edebali Makina in Turkey to DLA;

m.      It was further part of the conspiracy that SENBOL would and did receive payment from DLA and DLA Contractor 1;

n.      It was further part of the conspiracy that SENBOL would and did wire transfer money received from DLA and DLA Contractor 1 to Turkish bank accounts in the name of Edebali Makina;

o.      It was further part of the conspiracy that SENBOL, OZCAN, and SIMSEK would and did communicate via email, voice calls, and encrypted messaging applications;

p.      It was further part of the conspiracy that co-conspirators would and did employ various techniques to protect their anonymity and to thwart detection of their activities by government and law-enforcement agencies; and

q.      It was further part of the conspiracy that co-conspirators would and did perform acts and make statements to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts committed in furtherance thereof.

All in violation of 18 U.S.C. § 286.

## COUNT 2
(Conspiracy to Commit Wire Fraud)
(18 U.S.C. § 1349)

### A. Introduction

1.      Paragraphs 1 through 10 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

## B. The Conspiracy

2.      Beginning in or around April of 2019, and continuing until on or about February 15, 2022, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,
ONUR SIMSEK, and
YUKSEL SENBOL,**

did knowingly and willfully combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, any writings, signs, signals, pictures, and sounds, in violation of 18 U.S.C. § 1343.

## C. Manner and Means

3.      Paragraphs 12(a)-(q) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

All in violation of 18 U.S.C. § 1349.

## COUNTS 3 to 11
(Wire Fraud)
(18 U.S.C. § 1343)

### A. Introduction

1.      Paragraphs 1 through 10 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

### B. The Scheme and Artifice

2.      Beginning in or around April of 2019, and continuing until on or about February 15, 2022, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,**
**ONUR SIMSEK, and**
**YUKSEL SENBOL,**

aided and abetted by each other and by others known and unknown to the Grand Jury, did knowingly, and with intent to defraud, devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises that related to material facts, utilizing transmissions by means of wire communication in interstate and foreign commerce of any writings, signs, signals, pictures, and sounds.

### C. Manner and Means

3.      Paragraphs 12(a)-(q) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

### D. <u>Interstate Wire Transmissions</u>

4.     On or about the dates listed below, in the Middle District of Florida, and elsewhere, the defendants,

**MEHMET OZCAN,**
**ONUR SIMSEK, and**
**YUKSEL SENBOL**

for the purpose of executing the scheme and artifice and attempting to do so, did knowingly, and with intent to defraud, transmit and cause to be transmitted by wire communication in interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Date | Wire Communication |
|-------|------|--------------------|
| 3 | September 13, 2019 | Email from Mason Engineering to DLA submitting "MILITARILY CRITICAL TECHNICAL DATA AGREEMENT," in which SENBOL certified that "No person employed by the enterprise or eligible persons designated by the registrant to act on their behalf, who will have access to militarily critical technical data, is disbarred, suspended, or otherwise ineligible to perform on U.S. or Canadian Government contracts." |
| 4 | February 10, 2020 | Email from Mason Engineering to DLA stating, in part, that Mason Engineering would be manufacturing components in the United States. |
| 5 | March 3, 2020 | Email from Mason Engineering to DLA Contractor 1 containing quote number TWI-T4034, which stated that Mason Engineering was ISO 9001 certified. |

| 6 | **August 19, 2020** | Email from Mason Engineering to DLA Contractor 1 containing the invoice and Certificate of Conformance for DLA contract SPE5EM20V3481. |
|---|---|---|
| 7 | **August 26, 2020** | Email from Mason Engineering to DLA Contractor 1 containing the invoice and Certificate of Conformance for DLA contract SPE5E820P2506. |
| 8 | **October 1, 2020** | Email from Mason Engineering to DLA Contractor 1 containing the invoice and Certificate of Conformance for DLA contract SPE5E820V5560. |
| 9 | **November 19, 2020** | Submission of bid for DLA solicitation number SPE5EK21T1946 to DLA through online portal, representing that Mason Engineering would be the manufacturer of components to be supplied to DLA and that the components would be "Domestic End Products." |
| 10 | **April 5, 2021** | Email from Mason Engineering to DLA Contractor 1 containing the invoice and Certificate of Conformance for DLA contract SPE4A721P3032. |
| 11 | **April 7, 2021** | Email from Mason Engineering to DLA contractor stating, in part: "Of course material has to be domestic and we confirm that." |

In violation of 18 U.S.C. §§ 1343 and 2.

## COUNT 12
(Conspiracy to Commit Money Laundering)
(18 U.S.C. § 1956(h))

### A. Introduction

1.     Paragraphs 1 through 10 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

11

## B. The Conspiracy

2.     Beginning in or around April of 2019, and continuing until on or about February 15, 2022, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,**
**ONUR SIMSEK, and**
**YUKSEL SENBOL,**

did knowingly and willfully combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit an offense, that is, to transmit and transfer funds, that is, United States currency held in United States bank accounts, from a place in the United States, that is, Florida, to a place outside the United States, that is, Turkey, with the intent to promote the carrying on of specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1956(a)(2).

## C. Manner and Means

3.     Paragraphs 12(a)-(q) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

All in violation of 18 U.S.C. § 1956(h).

## COUNTS 13 to 19
(Money Laundering)
(18 U.S.C. § 1957)

1.     Paragraphs 1 through 10 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

2.     On or about each date specified below, in the Middle District of
Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,**
**ONUR SIMSEK, and**
**YUKSEL SENBOL,**

aided and abetted by each other and by others known and unknown to the Grand
Jury, did knowingly engage in a monetary transaction by, through, and to a financial
institution, affecting interstate and foreign commerce, in criminally derived property
of a value of greater than $10,000, that is, transferring U.S. funds by means of wire
transfer from the United States to Turkey, such property having been derived from
specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343:

| Count | Date | Amount |
|-------|------|--------|
| 13 | **August 21, 2020** | $24,000.00 |
| 14 | **September 9, 2020** | $39,000.00 |
| 15 | **October 26, 2020** | $11,000.00 |
| 16 | **January 25, 2021** | $35,000.00 |
| 17 | **February 11, 2021** | $30,800.00 |
| 18 | **March 19, 2021** | $18,550.00 |
| 19 | **May 18, 2021** | $27,000.00 |

In violation of 18 U.S.C. §§ 1957 and 2.

## COUNT 20
(Conspiracy to Commit Export Control Violations)
(50 U.S.C. § 4819)

### A. **Introduction**

1.      Paragraphs 1 through 10 of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

### B. **The Conspiracy**

2.      Beginning on an unknown date, but at least as early as in or around April of 2019, and continuing until on or about February 15, 2022, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,
ONUR SIMSEK, and
YUKSEL SENBOL,**

did knowingly and willfully combine, conspire, and agree with each other and with other persons, known and unknown to the Grand Jury, to commit an offense, that is, to export and cause to be exported, from the United States to Turkey, items, that is, export controlled technical drawings, without first having obtained a license or other written authorization for such export, in violation of the Export Control Reform Act of 2018, 50 U.S.C. § 4819(a) and 15 C.F.R. § 764.2.

### C. **Manner and Means**

3.      Paragraphs 12(a)-(q) of Count 1 of this Indictment are hereby realleged and incorporated by reference as though fully set forth herein.

All in violation of 50 U.S.C. § 4819.

14

**COUNTS 21 to 24**
(Violation of the Export Control Reform Act of 2018)
(50 U.S.C. § 4819)

1.      The allegations in paragraphs 1 through 10 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.      On or about the date specified in each count below, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,**
**ONUR SIMSEK, and**
**YUKSEL SENBOL,**

aided and abetted by each other and by others known and unknown to the Grand Jury, did willfully export, attempt to export, and cause to be exported the items described below from the United States to Turkey without first having obtained the required licenses or authorizations from the United States Department of Commerce:

| Count | Date | Item | Commerce Control List |
|-------|------|------|-----------------------|
| 21 | March 3, 2020 | U.S. Army Technical Drawing 8725275 | 0E606.a |
| 22 | December 1, 2020 | U.S. Navy Technical Drawing 8566076 | 8E609.a |
| 23 | December 7, 2020 | U.S. Air Force Technical Drawing 000993-152 | 0E604.a |
| 24 | December 7, 2020 | U.S. Air Force Technical Drawing 000993-995 | 0E604.a |

In violation of 50 U.S.C. § 4819 and 15 C.F.R. § 764.2.

## COUNT 25
(Violations of the Arms Export Control Act)
(22 U.S.C. § 2778)

1.     The allegations in paragraphs 1 through 10 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     On or about March 1, 2020, in the Middle District of Florida, the country of Turkey, and elsewhere, the defendants,

**MEHMET OZCAN,
ONUR SIMSEK, and
YUKSEL SENBOL,**

aided and abetted by each other and by others known and unknown to the Grand Jury, did willfully export, attempt to export, and cause to be exported, from the United States to Turkey, the technical drawing described below, which was and is designated as technical data directly related to a defense article on the United States Munitions List, the export of which was controlled under the Arms Export Control Act, without first having obtained from the United States Department of State a license or written approval for such export:

| Count | Date | Item | U.S. Munition List |
|-------|------|------|--------------------|
| **25** | March 1, 2020 | U.S. Navy Technical Drawing 42-40695. | VI(g) |

In violation of 22 U.S.C. § 2778 and 22 C.F.R. § 127.1.

## FORFEITURE ALLEGATIONS

1.     The allegations contained in Counts 2 though 25 are incorporated by

16

reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1), 22 U.S.C. § 401, 28 U.S.C. § 2461(c) and 50 U.S.C. § 2778.

2.      Upon conviction of a violation of 18 U.S.C. § 1343, or a conspiracy to violate 18 U.S.C. § 1343 (18 U.S.C. § 1349), the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense.

3.      Upon conviction of a violation of 18 U.S.C. §§ 1956 and/or 1957, the defendants shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), any property, real or personal, involved in such offense, or any property traceable to such property.

4.      Upon a conviction of a violation of 50 U.S.C. § 4819, or a conspiracy to violate 50 U.S.C. § 4819, the defendants shall forfeit to the United States, pursuant to 50 U.S.C. § 4819(d):

a.      Any property, real or personal, used, in any manner, to commit or facilitate the violation;

b.      Any property, real or personal, constituting or traceable to the gross proceeds taken, obtained, or retained, in connection with or as a result of the violation; and/or

c.      Any property constituting an item or technology that is exported or intended to be exported as a result of the violation.

5.      Upon conviction of the violation of 22 U.S.C. § 2778, the defendants

shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense, and, pursuant to 22 U.S.C. § 401 and 28 U.S.C. § 2461, any arms or munitions of war or other articles attempted to be exported in violation of 22 U.S.C. § 2778, and any vessel, vehicle, or aircraft used in exporting or attempting to export such articles.

6.     The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of proceeds obtained from, or involved in, the offenses.

7.     If any of the property described above, as a result of any act or omission of the defendants:

      a.     cannot be located upon the exercise of due diligence;

      b.     has been transferred or sold to, or deposited with, a third party;

      c.     has been placed beyond the jurisdiction of the court;

      d.     has been substantially diminished in value; or

      e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 18 U.S.C. § 982(b)(1), 28 U.S.C. § 2461(c) and

50 U.S.C. § 4819(d)(2).

A TRUE BILL

Foreperson

ROGER B. HANDBERG
United States Attorney

By: Cherie L. Krigsman
Assistant United States Attorney
Chief, National Security Section

By: Daniel J. Marcet
Assistant United States Attorney
Deputy Chief, National Security
Section

JENNIFER K. GELLIE
Acting Chief
Counterintelligence and Export
Control Section

By: Stephen Marzen
Trial Attorney
Counterintelligence and Export
Control Section

19

FORM OBD-34
October 23

No.

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

### THE UNITED STATES OF AMERICA

vs.

### MEHMET OZCAN,
### ONUR SIMSEK, and
### YUKSEL SENBOL

### INDICTMENT

Violations:   18 U.S.C. § 286, 18 U.S.C. § 1349, 18 U.S.C. § 1343,
18 U.S.C. § 1956(h), 18 U.S.C. § 1957, 50 U.S.C. § 4819, and
22 U.S.C. § 2778

A true bill

Foreperson

Filed in open court this 24th day
of October, 2023.

Clerk

Bail $_____